IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

STEPHANIE BLANKENSHIP,

     Plaintiff,

v.           CIVIL ACTION NO.   5:12-cv-06040

CATERPILLAR GLOBAL MINING, LLC,

     Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed Defendant's Motion for Summary Judgment (Document 33), attached exhibits, its memorandum in support (Document 34), Plaintiff's response in opposition (Document 35), attached exhibits, and Defendant's Reply (Document 37). After careful consideration of the parties' written submissions and the entire record, the Court, for the reasons stated herein, finds that Defendant's motion should be denied.

## *I.*   *BACKGROUND*

On August 23, 2012, Plaintiff, Stephanie Blankenship, filed a Complaint in the Circuit Court of Raleigh County, West Virginia, against Caterpillar Global Mining LLC f/k/a Bucyrus International Inc., claiming it violated the West Virginia Human Rights Act ("WVHRA"), West Virginia Code § 5-11-9, by refusing to hire her because of her sex. ("Compl.") (Document 1-1 at 4-8.) Plaintiff alleges that she applied for six warehouse worker positions with Defendant between October 2010 and November 2011. (*Id.* ¶¶ 9-15.)[1] Plaintiff further alleges that during her first

---

[1] Plaintiff later states that she applied for five warehouse worker positions. (Pl.'s Resp. at 2.)

interview, it was established that she was well qualified for the position based upon her various certifications and employment history. (*Id.* ¶ 11.) Although she was not chosen for the position, Plaintiff alleges that she was encouraged to reapply. (*Id.* ¶12.)   After being advised for the sixth time that she had not been chosen to fill the warehouse position for which she applied, Plaintiff alleges that she wrote a letter to Defendant's local offices and headquarters inquiring into why she had been repeatedly passed over. (*Id.* ¶¶ 14-15.)   Plaintiff alleges that in her letter she stated that she believed she was not being hired because she was a female and that Defendant refused to offer any explanation or deny her allegation. (*Id.* ¶ 16.)   Based upon the foregoing, Plaintiff seeks compensatory and punitive damages, damages for lost wages and benefits, as well as emotional distress, attorney fees and costs, prejudgment interest on all amounts claimed and such other relief as the Court may find appropriate. (*Id.* ¶ 23.)[2]

On September 28, 2012, Defendant removed this action to the Southern District of West Virginia pursuant to 28 U.S.C. §§ 1441 and 1446, claiming that this Court has diversity jurisdiction under 28 U.S.C. § 1332. ("Notice of Removal") (Document 1.) Defendant states that there is complete diversity among the parties and that the amount in controversy exceeds $75,000. (*Id.* at 1-2.)   In support, Defendant attaches an un-notarized affidavit of Dianna Alexander, the HR Consultant for Defendant, to show that the amount in controversy exceeds $75,000 based upon Plaintiff's claim of lost wages and benefits. (Document 1-3 at 1-3.)

On May 30, 2013, Defendant filed its Motion for Summary Judgment ("Def.'s Mot.") (Document 33), attached exhibits and memorandum in support. ("Def.'s Mem") (Document 34).[3]

---

2  Plaintiff's second count is for punitive damages based upon her allegation that Defendant's refusal to hire her was carried out by managerial employees in a deliberate, cold, callous, malicious, oppressive, and intentional manner in order to injure and damage her. (*Id.* ¶ 23.)
3  Defendant attaches the following six exhibits: (1) Stephanie Blankenship Deposition Transcript (Document 33-2 at

Defendant argues that Plaintiff's claims should be dismissed with prejudice because she cannot establish a *prima facie* case of gender discrimination in violation of the WVHRA and because no reasonable jury could conclude that Defendant's reasons for hiring other candidates are pretext for gender discrimination. (Def.'s Mot. at 2; Def's Mem at 10.)   Defendant outlines its hiring process and discusses each of the five warehouse worker positions Plaintiff applied for and explains why other workers were hired for those positions. (Def.'s Mem. at 3-7.)   Defendant asserts that Plaintiff has not set forth any evidence that its reasons for hiring other workers are pretextual or were motivated by Plaintiff's status as a female. (*Id.* at 16-17.)   Therefore, Defendant argues that its Motion for Summary Judgment should be granted. (*Id.*)

On June 11, 2013, Plaintiff filed her Response in Opposition ("Pl.'s Resp.") (Document 35) and attached exhibits.[4] She asserts that this is a "mixed motive" case, and therefore, she only needs to prove that a forbidden intent was a motivating factor in Defendant's decisions not to hire her. (*Id.* at 10.) Plaintiff argues that she, as well as other qualified female applicants, were repeatedly passed over for warehouse worker positions with Defendant because of their sex. (*Id.* at

2-18) and Deposition Exhibit 7 (Document 33-2 at 19-20), (2) William Dickinson Deposition Transcript (Document 33-3) and Deposition Exhibits 1- 8, and 10, (3) Dianna Alexander Deposition Transcript (Document 33-6) and Deposition Exhibits 13-1, (4) Jason Pittman Deposition Transcript (Document 33-8), (5) William Dickinson Declaration (Document 33-9) and (6) Dianna Alexander Declaration (Document 33-10) and Exhibits 1-7.

4 Plaintiff attaches the following exhibits: (1) Candidate Tracking and History of Stephanie Blankenship (Document 35-1 at 1-5); (2) William Dickinson Deposition Transcript (Document 35-1 at 6-17); (3) Interview Rating Form for George Nichols (Document 35-1 at 18); (4) Candidate Tracking and History of Charles Hunt (Document 35-1 at 19-20) and Interview Rating Form for Rick (Document 35-1 at 21-22); (5) Interview Rating Form for Stephanie Blankenship (Document 35-1 at 22); Ceridian Recruiting Solutions data for Warehouse Worker (DA12979) (Document 35-1 at 23-25); (7) Dianna Alexander Deposition Transcript (Document 35-1 at 26-29); (8) Interview Rating Form for Jamie Pettry (Document 35-1 at 30); (9) Interview Rating Form for Rebekah Goddard (Document 35-1 at 31); (10) Interview Rating Form for Phillip Cassidy (Document 35-1 at 32); (11) Candidate Tracking and History for Phillip Cassidy (Document 35-1 at 33-36); (12) Job Profile for Warehouse Worker DA13129 (Document 35-2 at 1-2); (13) Candidate Tracking and History for Alvin Cook (Document 35-2 at 3-5); (14) Alvin Cook's Employment Application (Document 35-2 at 6-10); (15) Interview Rating Form for Alvin Cook (Document 35-2 at 11); (16) Resume of Jaime Pettry (Document 35-2 at 12-13); (17) Profile for Stephanie Blankenship (Document 35-2 at 14-15); (18) Ceridian Recruiting Solutions data for Warehouse Worker (DA13555) (Document 35-2 at 16); (19) Ceridian Recruiting Solutions data for Warehouse Worker (DA13603) (Document 35-2 at 17-18); (20) Candidate Tracking and History of Jaime Pettry (Document 35-2 at 19-23); and (21) Ceridian Recruiting Solutions data for Warehouse Worker (WD14048) (Document 35-2 at 24-27.)

10-14.) Plaintiff specifically discusses two hiring decisions in which she was passed over for a less qualified male worker and argues that those decisions were motivated by Plaintiff's sex. (*Id.* at 11-12.) Plaintiff also asserts that Mr. Dickinson, who has been responsible for hiring employees at the Beckley warehouse for eight years, had never offered a position to a female until after she brought this action. (*Id.* at 12-13.) Plaintiff argues that in viewing the facts in the light most favorable to her, it is clear that Defendant discriminated against qualified female warehouse worker applicants for many years because of their sex. (*Id.* at 13-14.)  Accordingly, Plaintiff argues that Defendant's Motion for Summary Judgment should be denied. (*Id.*)

On June 18, 2013, Defendant filed its Reply ("Def.'s Rep.") (Document 37), wherein it argues that the decisions to hire other applicants for the five warehouse worker positions reveals no evidence that Plaintiff would have been hired "but for" her gender. (*Id.* at 1-2.) Defendant argues that Plaintiff was either not as qualified as the successful candidates or did not submit her resume for the position. (*Id.* at 2-6.) Defendant also argues that any subsequent changes in its hiring process are inadmissible pursuant to Rule 407 of the Federal Rules of Evidence. (*Id.* at 5 fn. 3.)[5] Defendant then emphasizes that Plaintiff, during her deposition, could not even articulate her reasons for believing she was not hired because she is a female. (*Id.* at 6.) When asked "[w]hat makes you think that [you were not hired] because of sex?" Plaintiff answered "I feel – I'm not sure at this time." (*Id.*) Defendant stresses that Plaintiff has not presented sufficient evidence to

---

5 Rule 407 of the Federal Rules of Evidence states that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
- negligence;
- culpable conduct;
- a defect in a product or its design; or
- a need for a warning or instruction.
But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407.

establish that the reasons offered for its hiring decisions are pretext and that the decisions were actually based upon gender discrimination. (*Id.*)

## II.    JURISDICTION

The threshold question for the Court to consider is whether it has federal subject matter jurisdiction in this case. By statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Defendant removed on the basis of Section 1332, which provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. §1332(a)(1). (Notice of Removal at 2.) Defendant has the burden of establishing diversity jurisdiction by a preponderance of the evidence. *See, White v. Chase Bank USA, NA.,* Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D.W.Va. Aug. 26, 2009) (Faber, J.) (citing *McCoy v. Erie Insurance Co.,* 147 F.Supp.2d 481, 488 (S.D.W.Va.2001) (Haden, J.).

Defendant states that there is complete diversity among the parties because Plaintiff is a citizen of West Virginia, whereas Defendant is a citizen of Delaware and Wisconsin. (Notice of Removal at 1-2.)  Defendant also states that the amount in controversy exceeds $75,000 based upon Plaintiff's request for lost wages and benefits. (*Id.*) In support, Defendant attaches an affidavit of Dianna Alexander, its HR Consultant, to show that had Plaintiff been hired as a warehouse worker in October 2010, she would have made at least $78,000 in wages and employment benefits. (Document 1-3 at 1-3.)   Ms. Alexander explains that a warehouse worker

hired in October 2010 would earn approximately $63,350.70 in total regular and over-time pay from October 2010 to the time of the removal. (*Id.* at 2.) She also asserts that the value of the benefits package provided to warehouse workers during that time would equal $11,150.50. (*Id.* at 2-3.) Moreover, the benefits to a warehouse worker include a 401(k) match program whereby if a worker paid six percent of their pay to the 401(k) plan, the value of Defendant's contribution would be approximately $2,300.00. (*Id.* at 3.) Finally, Ms. Alexander values the benefit of the pension plan contribution during this time period at $1,218.00. (*Id.*) Based upon the foregoing, Ms. Alexander states that the value of the pay and benefits from October 2010 to the time of removal would exceed $75,000.00. (*Id.*)

Upon consideration of Defendant's Notice of Removal and Plaintiff's Complaint, the Court finds that Defendant has established by a preponderance of the evidence the existence of diversity jurisdiction. Therefore, based on the record, the Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

## III.    STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Hunt v. Cromartie,* 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson,* 477 U.S. at 247 (1986). "Even if there is no dispute as to the evidentiary facts, summary judgment is not appropriate when the parties

6

dispute ultimate factual conclusions." *Rawls v. Associated Materials, LLC.,* No. 1:10-cv-01272, 2012 WL 3852875, at *2 (S.D.W.Va. Sept. 5, 2012) (Faber, J.) (citation omitted).

Once the moving party has met its burden, the non-moving party must "set forth specific facts that would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial." *Anderson,* 477 U.S. at 256. In other words, "the nonmoving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos,* No. 11-1476, 2012 WL 2130908, at * 3 (4th Cir.2012) (unpublished decision) (quoting *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985)).

In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.   Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

With respect to employment and discrimination cases, "[c]ourts take special care . . . because state of mind, intent, and motives may be crucial elements." *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329, 338 (W.Va. 1995). The Supreme Court of Appeals of West Virginia has explained that "[s]ummary judgment is often imprudent in discrimination cases that present issues of motive or intent because . . . 'credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]' " *West Virginia Human Rights Com'n v. Wilson Estates, Inc.,* 202 W.Va. 152, 503 S.E.2d

6, 14 (W.Va. 1998) (citing *Williams,* 459 S.E.2d at 336) (quoting *Anderson,* 477 U.S. at 255;

*accord Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.1951)).

## IV.    APPLICABLE LAW

Under the West Virginia Human Rights Act, West Virginia Code § 5-11-9(a)(1) (the

"WVHRA"), it is unlawful "[f]or any employer to discriminate against an individual with respect

to . . .  hire . . . if the individual is able and competent to perform the services required[.]"

W.Va.Code, 5-11-9(a)(1). "The term 'discriminate' or 'discrimination' means to exclude from, or

fail or refuse to extend to, a person equal opportunities because of . . .  sex[.]" W.Va.Code,

5-11-3(h). The Supreme Court of Appeals of West Virginia has held that an employment

discrimination claim under the WVHRA is governed by the same analytic framework of Title VII

of the Civil Rights Act of 1964, as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792,

802-04 (1973). *See, Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 457 S.E.2d 152, 159

(W.Va.1995).

A plaintiff may avoid summary judgment "through two avenues of proof." *Hill v.

Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 284 (4th Cir.2004).   First,

> [a] plaintiff can survive a motion for summary judgment by presenting direct or
> circumstantial evidence that raises a genuine issue of material fact as to whether an
> impermissible factor such as race motivated the employer's adverse employment
> decision . . . Alternatively, a plaintiff may proceed under the [*McDonnell Douglas*]
> "pretext" framework, under which the employee, after establishing a prima facie
> case of discrimination, demonstrates that the employer's proffered permissible
> reason for taking an adverse employment action is actually a pretext for
> discrimination.

*Diamond v. Colonial Life & Accident Ins. Co.,* 416 F.3d 310, 318 (4th Cir.2005) (citation omitted).

To prove a *prima facie* case of employment discrimination, the plaintiff must establish: (1)

that she is a member of a protected class, (2) that the employer made an adverse decision

8

concerning her and (3) that but for the plaintiff's protected status, the adverse decision would not have been made. *Reese v. CAMC Memorial Hosp., Inc.*, 2010 WL 2901627 (S.D.W.Va.,2010) (Goodwin, J.) (citing *Mayflower Vehicle Systems, Inc. v. Cheeks,* 218 W.Va. 703, 629 S.E.2d 762, 772–73 (W.Va.2006)). "[T]he showing the plaintiff must make as to the elements of the *prima facie* case in order to defeat a motion for summary judgment is 'de minimis.'" *Nestor v. Bruce Hardwood Floors, L.P.*, 210 W.Va. 692, 558 S.E.2d 691, 694 (W.Va. 2001) (quoting Syl. Pt. 4, in part, *Hanlon v. Chambers,* 195 W.Va. 99, 464 S.E.2d 741 (1995)).

"[I]f the employer offers a legitimate and nondiscriminatory reason for the adverse employment action, then the plaintiff has the burden of proving by a preponderance of the evidence that the offered reason is pretextual." *Reese*, 2010 WL 2901627, at \*4; (citing *Merritt,* 601 F.3d at 294; *Cheeks,* 629 S.E.2d at 773.)   However, a plaintiff need not show that the illegal motive was the sole motive behind the adverse decision. *Cheeks,* 629 S.E.2d at 773. Under a "mixed motive" analysis, a plaintiff may prove pretext by "showing that an illegal motive played a significant part in her employer's adverse decision." *Reese*, 2010 WL 2901627, at \*4; s*ee Worden v. SunTrust Banks, Inc.,* 549 F.3d 334, 342 (4th Cir.2008); *see also, Cheeks,* 629 S.E.2d at 773 ("Mixed motive cases are, simply, cases involving a mixture of legitimate and illegitimate motives; there is no one single 'true' motive behind the decision. Instead, the decision is a result of multiple factors, at least one of which is legitimate and at least one of which is illegitimate."). "The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." *Merritt,* 601 F.3d at 294 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981) (alterations in original.) In other words, "once an employer rebuts the prima facie case

9

with a legitimate, nondiscriminatory reason for the employment action, 'the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non.*' *Diamond,* 416 F.3d at 318 (alterations in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–43 (2000)).

## V.    DISCUSSION

In their written submissions, both parties address the five warehouse worker positions Plaintiff applied for between September 2010 and August 2011. The parties also address job posting 13129, a warehouse position Plaintiff did not apply for, but which was posted during the same time frame.

According to Defendant, the hiring process for warehouse worker positions began on Caterpillar's website. (Def.'s Mem at 2-3.) Before a candidate could be hired, he or she had to submit their resumes electronically. (*Id.*) (citing Document 36 at 4.) Dianna Alexander, the Human Resources Consultant for Caterpillar, then screened the applications for warehouse experience and forwarded a select group of applications to Willie Dickinson. (*Id.*) Mr. Dickinson, the Warehouse Supervisor responsible for staffing decisions throughout 2010 and 2011, would then decide which candidates to interview and ultimately hire. (*Id.*)

### A.    Job posting 12483

In its Motion for Summary Judgment, Defendant explains that Plaintiff was not hired for job posting 12483 because George Nichols, who declined the job offer, and Rick Hunt, who accepted the job, were both better qualified than Plaintiff. (Def.'s Mem. at 11-12.) Defendant notes that Mr. Nichols had more than twenty years of industry specific warehouse experience, and Mr. Hunt had twelve years of such experience. (*Id.* at 11.) Defendant stresses that Plaintiff had no

industry specific warehouse experience and far less overall warehouse experience than either Mr. Nichols or Mr. Hunt. (*Id.* at 12.) Therefore, Defendant asserts that the decision not to hire Plaintiff was not motivated by gender discrimination. (*Id.*)

In response, Plaintiff implies that the decision not to interview her and the timing of Mr. Hunt's job offer demonstrate gender discrimination. (Pl.'s Resp. at 3.) Plaintiff explains that although she applied for job posting 12483 on September 14, 2010, and her application was forwarded by Ms. Alexander for consideration, she was not selected for an interview. (*Id.*)   When Mr. Nichols declined the job offer, Mr. Dickinson still did not interview Plaintiff. (*Id.*)   Instead, Mr. Dickinson hired Mr. Hunt after he submitted his application on October 19, 2010. (*Id.*) (citing Document 35-1 at 19-20.)

In reply, Defendant argues that gender discrimination cannot be reasonably inferred from the timing of Mr. Nichols' and Mr. Hunt's interviews (October 6, 2010 and October 7, 2010, respectively) and job offers (October 11, 2010 and October 20, 2010, respectively) and the fact that Plaintiff was not chosen for an interview. (Def.'s Repl. at 2) (citing Document 33-4 at 11-37 and Pl.'s Resp. at 3.) Defendant emphasizes that both Mr. Nichols and Mr. Hunt were more qualified than Plaintiff, a fact which Plaintiff did not challenge. (Def.'s Repl. at 2.)

### *B.*   Job posting 12979

In its Motion for Summary Judgment, Defendant explains that although Plaintiff and another female applicant were two of the three finalists for job posting 12979, Phillip Cassidy was ultimately hired for the job. (Def.'s Mem. at 12.) Defendant states that Mr. Cassidy was offered the job because he received the highest interview score, had approximately eight years of warehouse experience including time as a warehouse supervisor, and had been delivering products to

Defendant's warehouse on an almost daily basis for three months. (*Id.*)   Defendant stresses that Mr. Dickinson had contact with Mr. Cassidy and was impressed with his job performance and industry knowledge. (*Id.* at 12-13.) Therefore, Defendant contends that the reasons for hiring Mr. Cassidy were legitimate and nondiscriminatory. (*Id.*)

In response, Plaintiff argues that the hiring process with respect to this job posting and the decision to hire Mr. Cassidy is indicative of discrimination. (Pl.'s Resp. at 4-5, 12-14.) Plaintiff explains that Ms. Alexander originally testified that "[she] ha[s] to submit the resume to the hiring manager before they can consider that candidate." (*Id.* at 4) (citing Document 33-6 at 10.) However, she later indicated that Mr. Dickinson was able to interview candidates whose applications were not forwarded by her. (*Id.*) (citing Def.'s Mem. at 3.)   Plaintiff notes that Mr. Dickinson selected three individuals, Plaintiff, Jamie Pettry, and Rebekah Goddard, to interview out of the applications that were forwarded to him by Ms. Alexander. (*Id.* at 4.)   Mr. Dickinson also interviewed three males, Mr. Cassidy, Alvin Cook, and Brian Griffin, even though either their applications had not been forwarded by Ms. Alexander for job posting 12979 or they had not applied for the job. (*Id.*)[6] Plaintiff emphasizes that instead of hiring Plaintiff or Ms. Pettry, Mr. Dickinson contacted and hired Mr. Cassidy. (*Id.* at 4, 12.) Plaintiff also challenges Defendant's assertion that Mr. Cassidy was hired in part because of his work with State Electric because his application and resume do not reference that work history. (*Id.* at 4-5 and 12.) Plaintiff also questions why Mr. Dickinson rated Mr. Cassidy higher than either Plaintiff or Ms. Pettry when he only had three months of warehouse experience, compared to their years of experience. (*Id.* at 12.)

---

6 Plaintiff stresses that Ms. Alexander testified that an individual must apply for a position before being considered. (*Id.*) (citing Document 33-6 at 9.) However, Plaintiff asserts that Mr. Cook was interviewed even though he did not apply for job posting 12979. (*Id.*) (citing Document 33-1 at 23-25.)

In reply, Defendant contends that Plaintiff misstates the record and confuses the issues. (Def.'s Repl. at 2-3.) Defendant explains that contrary to Plaintiff's assertion, Mr. Cassidy had approximately eight years of warehouse experience, not three months. (*Id.* at 3) (citing Document 33-5 at 12-28.)   Defendant contends that the record clearly shows that Mr. Cassidy did submit his resume for job posting 12979, was interviewed by Mr. Dickinson, and completed a formal application. (*Id.* at 3-4.)   Defendant stresses that so long as a candidate submitted his or her resume for a particular job posting, Mr. Dickinson was able to hire that individual even if their application was not submitted by Ms. Alexander. (*Id.* at 3.) Therefore, Defendant argues that Mr. Dickinson followed the hiring protocol at the time and that Mr. Cassidy was hired for legitimate nondiscriminatory reasons. (*Id.* at 2-4.)

> *C.*      **Job posting 13129**

In its Motion for Summary Judgment, Defendant explains that Mr. Dickinson hired Alvin Cook for job posting 13129, a second-shift warehouse worker position, because of his computer skills, his familiarity with Caterpillar's equipment, his warehousing experience, his experience in the mining industry, and the referral from his father, a Caterpillar employee. (Def.'s Mem. at 5-6) (citing Document 33-9 at 4.) Defendant stresses that Mr. Cook submitted his resume for the job and Ms. Alexander forwarded it to Mr. Dickinson for consideration. (Def.'s Mem. at 5-6) (citing Document 33-3 at 13; Document 36 at 5, 11-13.) Defendant notes that Plaintiff neither submitted her resume nor applied for the job. (*Id.* at 6) (citing Document 33-2 at 19; Document 36 at 5.)

In response, Plaintiff argues that even though she did not apply for job posting 13129, she could have been considered. (Pl.'s Resp. at 2) (citing Def.'s Mem. at 3.) Plaintiff notes that Mr. Dickinson testified that if a new warehouse position was listed he would consider those individuals

he had recently interviewed. (*Id.* at fn. 5.) Mr. Dickinson also testified that if Mr. Cassidy had turned down the offer for job posting 12979, he would have offered it to Ms. Pettry, and then to Plaintiff. (*Id.* at 5.) However, despite the fact that the job posting for 13129 was listed within a week of Plaintiff's and Ms. Pettry's interviews, Mr. Dickinson did not contact them. (*Id.* at 5) (citing Def.'s Mem at 6; Document 35-1 at 17.) Instead, Mr. Dickinson hired Mr. Cook after he applied a month after the job posting was listed. (Pl.'s Resp. at 5.)

Plaintiff also argues that Plaintiff and Ms. Petrry were scored lower than Mr. Cook on their interview rating forms because of their gender. (*Id.* at 11.) Plaintiff emphasizes that, at the time, Mr. Cook was a twenty-one year old male with experience as a bag boy at a supermarket and two days of mining experience, and yet scored a 102 on the interview rating form. (*Id.* at 6-7 and 11) (citing Document 35-2 at 11.) Plaintiff stresses that both she and Ms. Pettry have over six years of warehouse experience, but only scored 95s. (*Id.* at 6) (citing Document 35-1 at 22; Document 35-1 at 30; Document 35-2 at 12-15.) Plaintiff notes that while she had been trained in Microsoft and Ms. Pettry had six years of experience with ISO and SAP, they scored 7s for technical experience while Mr. Cook received an 8 for knowing Microsoft. (*Id.* at 6) (citing Document 35-1 at 12; Document 35-1 at 22; Document 35-1 at 30.) Plaintiff also notes that while Plaintiff and Ms. Pettry scored 7s on industry experience and industry knowledge, Mr. Cook scored 9s because "he had seen his father work on items in the shop." (*Id.* at 6 and 11) (quoting Document 35-1 at 12.)

In reply, Defendant argues that Plaintiff could not have been hired for job 13129 because she never submitted her resume for that posting. (Def.'s Repl. at 4.) Defendant asserts that it is undisputed that "a candidate cannot be hired for a job for which she never submitted her resume." (*Id.*) Defendant contends that because Plaintiff had already submitted her resume twice for

14

third-shift warehouse worker positions, she could have submitted her resume for job posting 13129. (*Id.* at 4-5.)   Defendant also argues that the Court should not consider Plaintiff's allegations with respect to other females because "they are: (1) unsupported by the evidence in the record; and (2) this is an individual disparate treatment claim brought by [Plaintiff], not disparate impact or class claim brought on behalf of all female job candidates." (*Id.* at fn. 3.)

      *D.*      **Job postings 13374**

In its Motion for Summary Judgment, Defendant states that out of the seventy-two candidates for job posting 13374, a third-shift job, Mr. Dickinson hired Mr. Cook, a current employee doing the same job on second shift. (Def.'s Mem. at 13.) Defendant reiterates that Mr. Cook was initially hired because of his warehousing experience, strong computer skills, was familiar with Caterpillar's equipment, and was referred by his father, a Caterpillar employee. (*Id.*)

In response, Plaintiff asserts that she applied for the warehouse worker position associated with job posting 13374. (Pl.'s Resp. at 2.)   However, she does not discuss it in detail. (*Id.*) Instead, Plaintiff focuses on job posting 13129. (*Id.* at 5-6, 11-12.)

In reply, Defendant acknowledges that "[i]t is undisputed that job posting 13374 was one of the five positions for which [Plaintiff] submitted her resume." (Def.'s Repl. at 4.) However, Defendant notes that Plaintiff's response in opposition does not challenge Defendant's hiring decision with regard to that job posting. (*Id.*) Moreover, Defendant explains that Mr. Cook was more qualified and "had the obvious upper-hand because he was already doing the same job on second-shift, and Dickinson was pleased with his performance." (*Id.* at 5.)

### E.    Job posting 13555

In its Motion for Summary Judgment, Defendant explains that Jason Gill was hired for warehouse worker job posting 13555 because he had recently worked in the warehouse with Mr. Dickinson as a temporary worker, and Mr. Dickinson was impressed with his job performance and knowledge of industry products. (Def.'s Mem. at 13-14.) Moreover, Mr. Gill had been recommended by Defendant's main contact with Raleigh Mine Supply. (*Id.*) Defendant stresses that Plaintiff was not recommended by anyone, did not have specific knowledge of the mining industry or Caterpillar equipment, and had not worked directly with Mr. Dickinson. (*Id.* at 14.) Therefore, Defendant contends that Mr. Gill was the more qualified candidate. (*Id.*)

In response, Plaintiff implies that gender discrimination motivated Ms. Alexander's decision not to forward her application to Mr. Dickinson for consideration when she had warehouse experience, was previously interviewed, and had been encouraged to reapply. (Pl.'s Resp. at 6-7.) Rather than forwarding Plaintiff's application, Ms. Alexander forwarded six male candidates' applications for consideration. (*Id.* at 6.) Plaintiff stresses that according to Ms. Alexander's own testimony, she would screen applications for warehouse experience and forward them to Mr. Dickinson for consideration. (*Id.* at 6-7) (citing 35-1 at 27.) However, she could not recall why Plaintiff's application was not forwarded. (*Id.* at 7) (citing 35-1 at 29.)

In reply, Defendant stresses that Plaintiff neither argues that she was better qualified than Mr. Gill nor has she challenged Mr. Dickinson's reasons for hiring him. (Def.'s Repl. at 5.) Defendant contends that the fact that Ms. Alexander did not forward Plaintiff's application for consideration is not sufficient evidence to justify a trial regarding the "but for" element of her gender discrimination case. (*Id.* at 5-6.)

### F.     Job posting 13603

In its Motion for Summary Judgment, Defendant explains that Mr. Dickinson hired Jason Pittman for job posting 13603 based upon his job performance as a temporary warehouse worker, his industry knowledge, his interactions with Mr. Dickinson, and a recommendation. (Def.'s Mem. at 14.) Defendant emphasizes that Plaintiff was not recommended by anyone, had not worked with Mr. Dickinson as a temporary warehouse worker, and did not have industry knowledge. (*Id.*)

In response, Plaintiff asserts that her application was not forwarded for consideration despite her warehouse experience. (Pl.'s Resp. at 7.) Rather, Ms. Alexander forwarded six male candidate's applications to Mr. Dickinson. (*Id.*) According to her deposition testimony, Ms. Alexander once again could not recall why Plaintiff's application was not forwarded. (*Id.*) Plaintiff also asserts that another female applicant, Ms. Pettry, applied for job posting 13603, but her application was likewise not forwarded despite her warehouse experience. (*Id.*)

In reply, Defendant emphasizes that Plaintiff does not argue that she was better qualified than Mr. Pittman or dispute Defendant's reasons for hiring him. (Def.'s Repl. at 5.) Defendant argues that the fact that Plaintiff's application was not forwarded is not sufficient evidence of gender discrimination. (*Id.* at 6.)

## VI.     ANALYSIS

Based upon a review of the record, the Court finds that Plaintiff has presented evidence sufficient to raise genuine issues of material fact as to whether Plaintiff's gender motivated Defendant's decisions not to hire her and whether Defendant's proffered reasons for not hiring Plaintiff are pretextual.[7]   Moreover, viewing the facts and inferences in the light most favorable to

---

[7] The Court has not considered the changes made to Defendant's hiring process as such changes are inadmissible to prove culpable conduct on behalf of Defendant. Rule 407 of the Federal Rules of Evidence, which has been applied to

Plaintiff, there is also a genuine issue of material fact as to whether Defendant's refusal to hire Plaintiff was "carried out by managerial employees in a deliberate, cold, callous, malicious, oppressive, and intentional manner in order to injure and damage [her]." (Compl. ¶ 23.)Therefore, Defendant's Motion for Summary Judgment should be denied.

### A. *Prima Facie Case*

The Court finds that Plaintiff has established a *prima facie* case of employment discrimination under the WVHRA. "To successfully defend against a motion for summary judgment, the plaintiff must make some showing of fact which would support a *prima facie* case for his claim." Syl. Pt. 2 *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423, 425 (W.Va.1986). As stated above, the plaintiff must establish the following: (1) that she is a member of a protected class; (2) that the employer made an adverse decision concerning her employment; and (3) that but for the plaintiff's protected status, the adverse decision would not have been made. *Cheeks,* 629 S.E.2d at 772–73. The Supreme Court of Appeals of West Virginia has recognized that " '[t]he burden of establishing a prima facie case of disparate treatment is not onerous.'" *Morris Mem'l Convalescent Nursing Home, Inc. v. West Virginia Human Rights Comm'n,* 189 W.Va. 314, 317, 431 S.E.2d. 353, 356 (W.Va. 1993) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–54 (1981)).

---

discrimination cases, provides: "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: . . . culpable conduct . . ." Fed .R. Evid. 407; *see, e.g., Estate of Hamilton v. City of New York,* 627 F.3d 50, 53–54 (2d Cir.2010) (excluding statement that, following challenged promotions, managerial staff decided to involve more individuals in promotion process); *McLaughlin v. Diamond State Port Corp.,* 2004 WL 3059543, *3 (D.Del.2004) ("It would be perverse indeed if attempts to reverse discrimination could be used to condemn a defendant."); *Stahl v. Board of Com 'rs of Unified Government of Wyandotte County/Kansas City, Kansas,* 244 F.Supp.2d 1181, 1188 (D.Kan.2003) ("[Plaintiff] seeks to offer the suspension of the [physical fitness] test as evidence that the test itself was a pretext for discrimination, thus seeking to prove "culpable conduct" in a manner forbidden by Rule 407.")

The Court finds that Plaintiff has carried her burden of establishing a *prima facie* case of discrimination. The first requirement is clearly established as it is undisputed that Plaintiff, as a woman, is a member of a protected class. *See, Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 465 S.E.2d 399, 410 (W.Va.1995). The second requirement that Defendant made an adverse decision concerning Plaintiff when it failed to hire her is also established. *See, Cheeks,* 629 S.E.2d at 772–73. Thus, the Court's inquiry is limited to the third prong of the *prima facie* discrimination case, i.e., whether Plaintiff can point to "some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Conaway,* 358 S.E.2d at 429-30.

> This evidence could, for example, come in the form of an admission by the employer, a case of unequal or disparate treatment between members of the protected class and others by the elimination of the apparent legitimate reasons for the decision, or statistics in a large operation which show that members of the protected class received substantially worse treatment than others.

(*Id.* at 30.) Therefore, to show the third requirement of the *prima facie* case, Plaintiff only has to show an inference that the decision not to hire her was based on gender. *Dawson*, 189 W.Va. 557, 433 S.E.2d 268, 273-74 (W.Va. 1993).

In response to Defendant's motion for summary judgment, Plaintiff provides circumstantial evidence that but for her gender she would not have been repeatedly passed over for warehouse worker positions. (Pl.'s Resp.); *Cheeks,* 629 S.E.2d at 772–73. First, Plaintiff shows that in the eight years that Mr. Dickinson had been responsible for hiring warehouse employees, he had never offered a warehouse worker position to a female. (Pl.'s Resp. at 12); (*see* Document 33-3 at tr. 67, ln. 6-23.)

19

Second, she cites to examples where Mr. Dickinson scored Plaintiff and other females lower on their interview rating forms. (Pl.'s Resp. at 11.) Specifically, Plaintiff notes the differences in her and Ms. Pettry's scores compared to Mr. Cook's. (*Id.*) Mr. Dickinson testified that with "technical expertise" he is looking for people with computer skills (Excel, email, and anything Microsoft uses), knowledge of parts components, and heavier equipment. (Document 33-3 at tr. 28, ln. 1-4.) He noted that "[i]t's always beneficial to have someone that has SAP knowledge" and that ISO knowledge is "a definite benefit." (*Id.* at ln. 4-10.)   However, he gave Ms. Pettry a 7 for technical expertise even though she had years of experience with ISO and SAP training. (Document 35-1 at 30; Document 35-2 at 12.) Mr. Dickinson testified that he gave Mr. Cook an 8 for technical expertise based upon a conversation during the interview in which he said he was "efficient in all Microsoft tools." (Document 33-3 at tr. 50-51.) However, Plaintiff was trained in Microsoft and yet received a 7. (Pl.'s Resp. at 6.)   Mr. Dickinson testified that "industry experience" encompasses "dealing with . . . the knowledge of the coal industry in whole." (Document 33-3 at ln.13-15.) He explained that it is more "hands-on" and involves what you've seen and dealt with. (*Id.* at ln., 18-19.) He also testified that industry knowledge "kind of falls in with the industry experience as well." (*Id.* at tr. 29, ln. 1-2.) However, he gave Mr. Cook 9s for both industry experience and industry knowledge because he had "been in situations where he had seen his father work on items in the shop." (*Id.* at tr. 51, ln.13-9.) Plaintiff and Ms. Pettry both received 7s. (Document 35-1 at 22, 30.) Mr. Dickinson explained that Ms. Pettry got 7s for industry experience and industry knowledge because "[t]here was no real experience within the mining industry as a whole." (Document 33-3 at tr. 65, ln. 1-8.) Plaintiff received 7s because "there was just no real general knowledge of our components." (*Id.* at tr. 106, ln. 10-17.)   Yet, Mr.

Cook received 9s even though Mr. Dickinson acknowledged that the extent of his experience in the coal industry amounted to two days working in a coal mine and watching his father work. (*Id.* at tr. 48-49.)

Nevertheless, Mr. Dickinson hired Mr. Cook for two different warehouse worker positions, job postings 13129 and 13374. Mr. Dickinson chose Mr. Cook over Plaintiff for job posting 13374 "primarily because he was a current Caterpillar warehouse worker doing the same job on second shift, and he was doing a good job." (Def.'s Mem. at 6.) However, at that point, Mr. Cook had been working for Defendant for less than three months. (Document 33-5 at 2, 5.) Plaintiff, on the other hand, had years of warehousing experience. (Document 35-2 at 14-15.)

Third, Plaintiff shows that instead of hiring her or two other females for job posting 12979, Mr. Dickinson deviated from the normal hiring process by interviewing and hiring Mr. Cassidy, whose application had not been forwarded by Ms. Alexander for that job. (Pl.'s Resp. at 12.) Ms. Alexander testified that "[she] ha[s] to submit the resume to the hiring manager before they can consider the candidate." (Document 33-6 at tr. 33, ln. 2-3.) "That's the normal process." (*Id.* at tr. 33-34.) Ms. Alexander later testified that "[Mr.] Dickinson was free to hire a candidate that [she] had not pre-screened and forwarded to him for consideration." (Document 36 at 4.) Nevertheless, Plaintiff shows that when Mr. Dickinson was faced with interviewing three females for job 12979 from the group forwarded by Ms. Alexander, he deviated from the "normal process" and contacted Mr. Cassidy.

Fourth, Plaintiff shows that she was treated differently in the hiring process than male candidates. For example, Defendant argues that Plaintiff was not hired for job posting 13129 because she never submitted her resume for that job. (Def.'s Repl. at 4.) However, Defendant

considered and interviewed Mr. Hunt for job posting 12483 when he had not submitted his resume for that job or any job. (Document 35-1 at 19-21.) Mr. Dickinson interviewed Mr. Hunt for a "3rd Shift Warehouse Worker" position on October 7, 2010. (*Id.*) Mr. Hunt applied for job posting 12483 through a recruiter on October 19, 2010, and was hired the next day. (*Id.*) Ms. Alexander explained that when a candidate applies to a job through a recruiter, she is the one who actually applies that person for a particular job. (Document 33-6 at tr. 23, ln. 16-19.) She noted that "some of [the applicants] aren't computer savvy and if they don't apply to the job that they're interested in, their resume just sits out there, it's not attached to a job." (*Id.* at tr. 23-24.) She thought that "either Mr. Hunt or [Mr. Dickinson] told [her] that that was the job that they wanted attached to, that they were interested in, so [she] attached them to this particular listing." (*Id.* at tr. 24, ln. 4-7.) When asked how it was possible that Mr. Dickinson interviewed Mr. Hunt for job posting 12483 before he applied for that job, Ms. Alexander answered, "I don't know." (*Id.* at tr. 24-25.) Moreover, she did not have any indication that Mr. Hunt had applied before October 19, 2010. (*Id.*) There is also some evidence that Mr. Dickinson considered and interviewed Mr. Cook for job posting 12979 even though he had not applied for that job. (Document 33-1 at 23-25.)[8] Therefore, there is evidence that Mr. Dickinson considered and interviewed candidates, *male* candidates, for jobs they had not applied for and then ultimately hired them.

Moreover, Mr. Dickinson testified that he would consider candidates he had recently interviewed for subsequent new openings for warehouse worker positions. (Document 33-3 at tr. 19.) However, he did not consider Plaintiff even though she qualified as a finalist a week before a new position, (job posting 13129), was opened. (Pl.'s Resp. at 5.) There is also evidence in the

---

[8] The Court notes that during his deposition, Mr. Dickinson testified that he thinks that the date on Mr. Cook's Interview Rating Form is incorrect. (Document 33-3 at tr. 76-77.)

record that if Mr. Dickinson were interested in a candidate, he would consider and interview them regardless of whether or not they had applied for that job, and then direct them to submit their resume before hiring them. For example, Mr. Dickinson contacted Mr. Pittman about job posting 13603, directed him to apply online, and then hired him. (Document 33-8 at tr. 10-11.) Therefore, there is evidence contrary to Defendant's assertions that it did not consider and interview applicants who had not applied for any particular job posting. This evidence could create an inference that the Plaintiff may have been treated differently because of her sex.

Finally, Plaintiff presents evidence that although Ms. Alexander testified that she screened applications for warehouse experience and would forward them to Mr. Dickinson for consideration, she did not forward Plaintiff's resume for job postings 13555 and 13603. (Document 35-1 at 27.) Even though Plaintiff had warehouse experience, her resume had been forwarded for three similar job postings, she had been chosen for an interview, scored a 95 on the Interview Rating Form, had been "recommended for hire," and had qualified as a finalist for job posting 12979, Ms. Alexander did not forward Plaintiff's resume and could not recall why she did not do so. (Document 35-1at 29; Def.'s Mem. at 4-5.) Instead, Ms. Alexander forwarded applications of six male candidates for those posting. (Document 35-2 at 16-18.) Notably, these screening decisions occurred after Mr. Dickinson selected three women to interview out of the applications she had forwarded for job posting 12979, but did not hire any of them. (Pl.'s Resp. at 4.) Instead, he deviated from what the Defendant represents to be the normal process, interviewed three males candidates whose applications had not been forwarded to him and hired one of them. (*Id.*)

Upon review of the record and in viewing the underlying facts and inferences in the light most favorable to Plaintiff, the Court finds that Plaintiff has provided sufficient evidence to establish a genuine issue of material fact with regard to the causal connection between her failure to be hired and her gender. *Anderson,* 477 U.S. at 256. "In determining whether the plaintiff has met the *de minimis* initial burden of showing circumstances giving rise to an inference of discrimination, the function of the [district] court on a summary judgment motion is to determine whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Nestor v. Bruce Hardwood Floors, L.P.*, 210 W.Va. 692, 558 S.E.2d 691, 694 (W.Va. 2001) (citation omitted). Because Plaintiff has provided some evidence from which a reasonable juror could infer that Defendant's decision not to hire her was based on gender, she has satisfied the third requirement in her *prima facie* case. (*Id.*) Accordingly, Plaintiff has established a *prima facie* case of employment discrimination.

### B. *Legitimate Non-Discriminatory Reasons*

In its Motion for Summary Judgment and Reply, Defendant argues that Plaintiff's gender discrimination claim fails because she cannot establish that the reasons behind Defendant's hiring decisions were pretext for gender discrimination. As stated above, Defendant contends that it hired other candidates over Plaintiff because they were either more qualified or Plaintiff had not applied for the position. (Def.'s Mem. at 3-4.)

With respect to job posting 12483, Defendant explains that it offered the position to Mr. Nichols and then to Mr. Hunt because based upon their years of experience in shipping and receiving industrial equipment, they were more qualified than Plaintiff. (Def.'s Repl. at 2.) As to job posting 12979, Defendant states that it hired Mr. Cassidy because he earned the highest

interview score, had years of warehouse experience including experience in a supervisory role, and had been delivering products to Caterpillar on an almost daily basis for three months as an employee of State Electric. (Def.'s Mem. at 4-5.) With respect to job posting 13129, Defendant explains that it hired Mr. Cook because he submitted his resume for the job while Plaintiff did not. (*Id.* at 5-6.) Defendant asserts that it is undisputed that "a candidate cannot be hired for a job for which she never submitted her resume." (Def.'s Repl. at 4.) Moreover, Defendant contends that Mr. Dickinson was impressed with Mr. Cook's computer skills, his familiarity with Caterpillar's equipment, his experience in warehousing and in the mining industry, and the referral from his father, a Caterpillar employee. (Def.'s Mem. at 5-6.) As to job posting 13374, Defendant states that it hired Mr. Cook because he was a current warehouse worker on second-shift and Mr. Dickinson was impressed with his performance. (*Id.* at 6.) With respect to job postings 13555 and 13603, Defendant explains that Mr. Gill and Mr. Pittman were hired for those respective jobs because they were temporary employees with recommendations and Mr. Dickinson was impressed with their job performances and knowledge of products. (*Id.* at 6-8.) Defendant also notes that Plaintiff's resume had not been forwarded for those positions. (*Id.* at 6-7.) In sum, Defendant argues that its hiring decisions were based upon legitimate non-discriminatory reasons.

### C. Pretext

If a defendant employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action, for the plaintiff to be able to proceed with her claim, she must establish the existence of a genuine issue of material fact as to whether defendant's reason was pretextual. *See, Garvin v. World Color Printing (USA) II Corp*, 2011 WL 1485998, at * 11 (N.D.W.Va. 2011); *Councell v. Homer Laughlin China Co.,* 2012 WL 907086, at * 13

(N.D.W.Va. 2012) (finding that even if the plaintiff had satisfied her burden of establishing a *prima facie* case of discrimination, the defendant is still entitled to summary judgment because the plaintiff "failed to present any evidence which could allow a reasonable juror to find that the defendant's proffered [legitimate, non-discriminatory reason] was a pretext for discrimination.") A plaintiff may prove pretext by "showing that an illegal motive played a significant part in her employer's adverse decision." *Reese*, 2010 WL 2901627, at *4.

Plaintiff argues that Defendant's hiring decisions were motivated in part by a forbidden intent, namely, gender discrimination. (Pl.'s Resp. at 10.) Plaintiff's overarching circumstantial evidence is the fact that Mr. Dickinson had not offered a warehouse worker position to a female in the eight years he was responsible for staffing decisions. (*Id.* at 12.) Plaintiff also argues that qualified women were repeatedly passed over, in many cases by less qualified men, or not considered at all. (*Id.* at 10.) As discussed above, Plaintiff provides evidence that the hiring criteria on the interview rating form was applied differently to her and another female as compared to Mr. Cook. (*See, infra* VI, A.) Plaintiff also provides evidence that although she had warehouse experience, her resume had been forwarded multiple times, she had been interviewed, and had been a finalist for job posting 12979, Ms. Alexander did not forward her application for job postings 13555 and 13603. (*Id.*) Instead, she forwarded the applications of six male candidates for each of those positions. (*Id.*) Plaintiff also showed that Mr. Dickinson deviated from the normal hiring process when he was faced with interviewing three females from the screened applications, by interviewing three male candidates who had not applied for the job or whose applications had not been forwarded by Ms. Alexander for job posting 12979. (*Id.*)[9]  Instead of hiring a female

___

9 Plaintiff asserts that Mr. Cook was interviewed even though he did not apply for job posting 12979. (*Id.*) (citing Document 33-1 at 23-25.) Mr. Dickinson testified that he recalled having a round of interviews in February of 2011 in

candidate from the prescreened selection, Mr. Dickinson contacted and hired Mr. Cassidy even though his application had not been forwarded by Ms. Alexander for consideration. (*Id.*)

Plaintiff also argues that Defendant's reason for not hiring her for job posting 13129 is "hollow." (Pl.'s Resp. at 12.) Plaintiff provides some evidence of inconsistencies in Mr. Dickinson's testimony and treatment of Plaintiff and other females as compared to male candidates. (*Id.* at 11-12.) For example, Defendant argued that it could not hire Plaintiff for job posting 13129 because she did not apply for the position. (Def.'s Repl. at 4-5.) However, during his deposition, Mr. Dickinson testified to the following:

> Q. [] If you've got a warehouse position open and you interview four or five individuals and then you hire one and then within a month or two it comes open again, would you consider those individuals that you interviewed a month or two before –
>
> A. Yes . . . if it was a close time frame, I'd still consider.

(Document 33-3 at tr. 19 ln.3-11.)

Mr. Dickinson later explained that because he could not hire someone who had not applied online, he would have to contact the candidate and tell them to reapply. (Document 33-3 at tr. 108-09.)   Mr. Dickinson testified that he had never done so. (*Id.*) Yet, there is evidence that when a warehouse position became available, Mr. Dickinson contacted a potential candidate who was male and directed him to apply online.   Mr. Pittman, a male temporary worker, testified that when a job opening was posted, Mr. Dickinson approached him and asked if he was interested in applying. (Document 33-8 at tr. 10, ln. 10-18.) Mr. Dickinson then informed Ms. Alexander that Mr. Pittman was interested in the position and sent him over to see her. (*Id.* at ln. 19-21.) Ms.

---

which he interviewed Mr. Cook and Mr. Cassidy. (Document 33-3 at tr. 53.) This is consistent with the dates of the interview rating forms which state Mr. Cassidy was interviewed February 24, 2011 and Mr. Cook on February 28, 2011. (Document 33-4 at 38; Document 33-5 at 12, 21, 23.) However, he later testified that he thinks the dates are wrong. (*Id.* at tr. 60-61, 76-78.) Mr. Dickinson explained that he recalled interviewing Phillip Cassidy, Jamie Pettry, Rebekah Goodard, and Plaintiff around the same time, but not Mr. Cook. (*Id.* at tr. 77.)

Alexander then instructed him to fill out an online application, which he did the following day. (*Id.* at tr. 11, ln. 1-16.) However, when job posting 13129 opened, Mr. Dickinson did not consider the two female finalists for job posting 12979 even though he had interviewed them less than a week before.   Instead, he hired Mr. Cook a month later.

Upon a review of the entire record, and viewing the underlying facts and inferences in the light most favorable to Plaintiff, the Court finds that she has provided evidence sufficient to raise a genuine issue of material fact as to whether Defendant's articulated legitimate non-discriminatory reasons for failing to hire her were pretext for unlawful discrimination. *See, Diamond,* 416 F.3d at 318. In other words, she has shown that there is a genuine issue of material fact concerning whether gender discrimination played a significant part in Defendant's adverse decisions. *Reese*, 2010 WL 2901627, at *4. Therefore, Defendant is not entitled to summary judgment on Plaintiff's claim.

### D.  Punitive Damages

Moreover, based upon the foregoing, and viewing the facts and inferences in the light most favorable to Plaintiff, the Court further finds that there is a genuine issue of material fact with respect to whether Defendant's refusal to hire Plaintiff was "carried out by managerial employees in a deliberate, cold, callous, malicious, oppressive, and intentional manner in order to injure and damage [her]." (Compl. ¶ 23.) On a motion for summary judgment, the court must "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644–45 (4th Cir.2002). Even though Plaintiff was not certain in what way Defendant acted maliciously towards her during her deposition and she failed

28

to address her punitive damages claim in her response in opposition, her arguments and the evidence she presents, with respect to the substantive claim, raise genuine issues of material fact with respect to punitive damages.

The most favorable inferences drawn from the evidence could suggest that Defendant intentionally took steps to avoid hiring qualified women for warehouse worker positions for eight years, including Plaintiff.   For example, as noted above, when faced with three women finalists for job posting 12979 out of the applications forwarded to him by Ms. Alexander, Mr. Dickinson hired a male applicant instead. Afterwards, on two separate occasions, Ms. Alexander did not forward Plaintiff's resume to Mr. Dickinson for consideration despite her qualifications and previous interview.   Moreover, as stated above, Mr. Dickinson scored Plaintiff and another female with years of experience in warehousing lower on their Interview Rating Forms than a twenty-one year old male with experience as bagboy in a grocery store who had spent two days in a coal mine and seen his father work. (Document 35-1 at 22, 30; Document 35-2 at 1-11; Document 33-3 at tr. 48-49, 51.)

Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, there is sufficient evidence to create a genuine issue of material fact as to whether Mr. Dickinson and Ms. Alexander, acting on behalf of Defendant, acted in a deliberate, cold, callous, malicious, oppressive, and intentional manner in its refusal to hire Plaintiff in order to injure or damage her. (*See, infra.* VI, A.) Accordingly, Defendant's Motion for Summary Judgment should also be denied with respect to Count II of Plaintiff's Complaint, her claim for punitive damages.

### *CONCLUSION*

Wherefore, based on the findings herein, the Court does hereby **ORDER** that *Defendant's Motion for Summary Judgment* (Document 33) be **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:      August 9, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA